**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

DSAI, INC., DAVID ROZHANSKY,
and STAN KRASNY,

Plaintiffs,

v.

**MEMORANDUM OF LAW & ORDER**
Civil File No. 06-4545 (MJD/SRN)

MARKET DIRECT, LLC d/b/a
Cleaner Options and ANDREW
M. APPELBAUM,

Defendants.

---

Boris Parker, Bassford Remele PA, and Daniel P. H. Reiff and Margaret E. Noubissie, Saliterman & Siefferman, PC, Counsel for Plaintiffs DSAI, Inc., David Rozhansky, and Stan Krasny.

Cynthia M. Klaus and Jon S. Swierzewski, Larkin Hoffman Daly & Lindgren Ltd., Counsel for Defendants Market Direct, LLC., and Andrew M. Appelbaum.

---

## I. INTRODUCTION

This matter is before the Court on Defendant Market Direct, LLC's Motion to Dismiss the Amended Complaint. [Docket No. 14] Defendant Andrew Appelbaum has joined in the Motion to Dismiss. [Docket No. 31] The Court heard oral argument on February 16, 2007.

## II. BACKGROUND

### A. Factual Background

According to the Amended Complaint, Plaintiff DSAI, Inc. ("DSAI") is a Minnesota corporation in the dry cleaning business. (Am. Compl. ¶ 1.) Plaintiffs David Rozhansky and Stan Krasny are shareholders of DSAI. (Id. ¶¶ 2-3.) Defendant Market Direct, LLC d/b/a Cleaner Options ("Market Direct") is a Connecticut limited liability company that, doing business as Cleaner Options, provides dry cleaning and laundry delivery service. (Id. ¶¶ 4, 16.) Defendant Andrew M. Appelbaum is a principal of Market Direct. (Id. ¶ 5.)

DSAI, through Rozhansky and Krasny, and Market Direct, through Appelbaum, negotiated a business arrangement in which Market Direct would develop and market a delivery route to bring clothes to DSAI and DSAI would pay Market Direct 20% of gross revenues. (Am. Compl. ¶ 19.)

In January 2004, DSAI, Rozhansky, and Krasny entered into a Joint Venture Agreement ("Agreement" or "Joint Venture Agreement") with Market Direct. (Ex. A to Am. Compl.) The Agreement contains the following arbitration provision:

> Arbitration.  Except for any actions brought with respect to the ownership or use of CO's [Market Direct's] trademarks, any claim or controversy arising out of or related to this Agreement, or the making, performance, breach, interpretation, or termination thereof, shall be finally settled by arbitration pursuant to the then prevailing Commercial Arbitration Rules of the American Arbitration Association or any successor thereto, by one arbitrator appointed in accordance with such rules.  Any award of the arbitrator shall be in writing, shall

> state the reasons for the award (including any findings of fact and conclusions of law) and shall explain the manner in which any awarded damages are calculated.  The arbitrator shall not have the power to award damages in excess of actual damages, such as punitive damages.  The prevailing party shall be entitled to recover its expenses, including reasonable attorney's fees and accounting fees, in addition to any other relief to which it is found entitled.  All arbitration shall take place in Fairfield County Connecticut.  The arbitration award shall be binding upon the parties and may be entered and enforced in any court of competent jurisdiction.  Any arbitration proceeding shall be limited to controversies between R&S [Rozhansky and Krasny d/b/a Grand Cleaners or DSAI] and CO and shall not be expanded to include any other Venturer as party, or include the adjudication of class action claims.

(Agreement § 6.1.)

The parties' business relationship fell apart regarding which delivery routes Market Direct would develop, what resources DSAI was required to devote, employee training, and pricing.  (Am. Compl. ¶¶ 22-37.)  For instance, Defendants allegedly made disparaging statements to DSAI's customers and bank.  (Id. ¶ 73.)

### B.    Procedural Background

In October 2006, DSAI, Rozhansky, and Krasny filed suit against Market Direct in Minnesota state court, Hennepin County.  On November 17, 2006, Market Direct removed the lawsuit to this Court based on diversity jurisdiction.

On November 22, 2006, Market Direct filed a motion to dismiss the Complaint on the grounds that the claims in the Complaint were subject to mandatory arbitration.  On December 15, 2006, Plaintiffs filed an Amended Complaint against Market Direct and Appelbaum.  The Amended Complaint

alleges seven counts, each against both Defendants: Count One: Rescission Pursuant to Minnesota Statute § 80C.17 and Common Law; Count Two: Violation of the Minnesota Deceptive Trade Practices Act; Count Three: Violation of the Minnesota Prevention of Consumer Fraud Act; Count Four: Interference with Contractual and Business Relationships; Count Five: Breach of Partnership/Joint Venture Agreement; Count Six: Breach of Fiduciary Duties as Partner/Joint Venturer; and Count Seven: Unjust Enrichment. Plaintiffs seek a declaration that the Joint Venture Agreement is void, rescission of the Agreement, compensatory damages, equitable relief, injunctive relief, and attorney fees and costs.

Market Direct has now filed this Motion to Dismiss the Amended Complaint on the grounds that all claims are subject to mandatory arbitration. Appelbaum joins in the motion to dismiss.

## III.   DISCUSSION

### A.   Standard

"In considering a motion to dismiss, [the Court] must assume that all the facts alleged in the complaint are true. The complaint must be liberally construed in the light most favorable to the plaintiff." Luney v. SGS Auto. Servs., Inc., 432 F.3d 866, 867 (8th Cir. 2005) (citation omitted).

The Federal Arbitration Act ("FAA") provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration

a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA allows a party to secure a court order compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement.  9 U.S.C. § 4.

In deciding whether or not to compel arbitration, this Court "must determine whether there is a valid agreement to arbitrate and whether the specific dispute at issue falls within the substantive scope of that agreement."  Larry's United Super, Inc. v. Werries, 253 F.3d 1083, 1085 (8th Cir. 2001) (citation omitted).  The Court must keep "in mind that the FAA's provisions manifest a liberal federal policy favoring arbitration agreements."  Id. (citation omitted).  "[W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that [a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage."  AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986) (citation omitted).

**B.     Whether There Is a Valid Agreement to Arbitrate**

**1.     Standard**

The validity of an arbitration agreement is determined by state contract law. Lyster v. Ryan's Family Steak Houses, Inc., 239 F.3d 943, 946 (8th Cir. 2001). However, the Court applies only general state contract law; in other words, the Court "may not invalidate an arbitration agreement under any state law applicable only to arbitration provisions; instead, [the Court] may apply only a state's general contract defenses." Barker v. Golf U.S.A., Inc., 154 F.3d 788, 791 (8th Cir. 1998) (citation omitted).

The Court applies "ordinary state-law contract principles to decide whether parties have agreed to arbitrate a particular matter, giving healthy regard for the federal policy favoring arbitration." Asia Pac. Indus. Corp. v. Rainforest Café, Inc., 380 F.3d 383, 385 (8th Cir. 2004) (citation omitted). In this diversity case, Minnesota law applies. Id. "Minnesota follows the objective theory of contract formation, under which an outward manifestation of assent is determinative, rather than a party's subjective intent. The test for whether a contract has been formed is an objective one to be judged by the words and actions of the parties and not by their subjective mental intent." Id. (citations omitted).

The Joint Venture Agreement demonstrates a clear intent to arbitrate. The Agreement is in writing, was signed by Plaintiffs and Market Direct, and is based

on adequate consideration. It provides that "any claim or controversy arising out of or related to this Agreement, or the making, performance, breach, interpretation, or termination thereof, shall be finally settled by arbitration." This broad, mandatory language makes it clear that the parties intended to arbitrate.

Plaintiffs assert two main arguments that the Agreement is not valid: they claim that the Agreement does not evidence a transaction involving interstate commerce and that the Agreement is void as a violation of the Minnesota Franchise Act.

### 2.   Whether the Transactions Involved Interstate Commerce

Plaintiffs argue that the FAA does not apply because the transactions governed by the Joint Venture Agreement did not involve interstate commerce. They claim that DSAI's business, Grand Cleaners, is a local dry cleaning company and that its activities have never extended beyond the Twin Cities metropolitan area. Plaintiffs also claim that all of Grand Cleaner's employees live and work in the Twin Cities metropolitan area. Finally, they assert that the Joint Venture Agreement was executed in the Twin Cities metropolitan area.

The Supreme Court has broadly interpreted the "involving commerce" requirement in the FAA:

> We have interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce'-words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power. Because

>the statute provides for 'the enforcement of arbitration agreements within the full reach of the Commerce Clause,' it is perfectly clear that the FAA encompasses a wider range of transactions than those actually 'in commerce'-that is, 'within the flow of interstate commerce[.]'

<u>Citizens Bank v. Alafabco, Inc.</u>, 539 U.S. 52, 56 (2003) (citations omitted). The court further explained that "Congress' Commerce Clause power may be exercised in individual cases without showing any specific effect upon interstate commerce if in the aggregate the economic activity in question would represent a general practice . . . subject to federal control. Only that general practice need bear on interstate commerce in a substantial way." <u>Id.</u> at 56-57 (citations omitted).

The transactions in this case involve interstate commerce. Based on the Amended Complaint and the Agreement, the contract is between a Connecticut limited liability company with its principal place of business in Connecticut and two Minnesota residents and their Minnesota-based business and provides that the Connecticut company will provide services from Connecticut to the Minnesota business in Minnesota, which will then send payments to Connecticut. <u>See</u> <u>Barker v. Golf U.S.A., Inc.</u>, 154 F.3d 788, 790-91 (8th Cir. 1998) (noting that franchise agreement involved interstate commerce when "[t]he parties are located in different states, Oklahoma and Missouri, and the agreement contemplates the transfer of inventory and money between the states"). Under the Supreme Court's

broad interpretation of the term "involving commerce," the transactions in this case fit the FAA's requirement.

### 3. Whether the Joint Venture Agreement Is Void as a Violation of the Minnesota Franchise Act

Plaintiffs argue that the Joint Venture Agreement is void because it violates the Minnesota Franchise Act; thus, they are entitled to rescission of the Agreement. They assert that although the agreement purports to be a "joint venture" agreement, in reality, it is a franchise agreement under Minnesota Statute § 80C.01, subdivision 4. They conclude that the entire agreement is void, and they should be restored to the position they occupied before their involvement with Defendants: the Court should treat the Joint Venture Agreement as if it never existed. They argue that when a franchisor violates the Minnesota Franchise Act by failing to register, the entire agreement is void and franchisee is entitled to rescission. Chase Manhattan Bank, N.A. N.Y., N. Y. v. Clusiau Sales & Rental, Inc., 308 N.W.2d 490, 494 (Minn. 1981)

The Supreme Court recently explained:

> [U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance. . . . [T]his arbitration law applies in state as well as federal courts. . . . [W]e conclude that because respondents challenge the Agreement, but not specifically its arbitration provisions, those provisions are enforceable apart from the remainder of the contract. The challenge should therefore be considered by an arbitrator, not a court.

Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, __, 126 S. Ct. 1204, 1209 (2006). The arbitrator decides both claims that a contract is voidable and that it is void. Id. at 1209-10. See also Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd., 1 F.3d 639, 642 (7th Cir. 1993) (holding that arbitration provision covering all claims "arising out of or relating to" agreement required arbitration of claim for rescission under Illinois Franchise Disclosure Act for failure to register franchise agreement), cited favorably in Houlihan v. Offerman & Co., Inc., 31 F.3d 692, 695 (8th Cir. 1994).

Plaintiffs make no allegation that this particular arbitration clause is void. Rather, they assert that the entire Agreement is invalid under the Minnesota Franchise Act. The Agreement provides that "any claim or controversy arising out of or related to this Agreement" or related to "the making . . . [or] interpretation" of the Agreement is subject to mandatory arbitration. Under Buckeye Check Cashing, Sweet Dreams Unlimited, and Houlihan, the arbitrator, not this Court, decides whether the Joint Venture Agreement is void under the Minnesota Franchise Act.

### C. Whether Plaintiffs' Claims Fall Within the Scope of the Arbitration Provision

#### 1. Whether the Arbitration Clause Is Sufficiently Broad to Cover Plaintiffs' Claims

The Court has examined each count in the Amended Complaint and concludes that the broad arbitration provision in the Agreement covers all counts. Under the arbitration provision,

> Except for any actions brought with respect to the ownership or use of CO's [Market Direct's] trademarks, any claim or controversy arising out of or related to this Agreement, or the making, performance, breach, interpretation, or termination thereof, shall be finally settled by arbitration . . .

The Amended Complaint contains no trademark claims.

In Count One: Rescission Pursuant to Minnesota Statute § 80C.17 and Common Law, Plaintiffs allege that the Agreement is invalid because it violates the Minnesota Franchise Act and because Defendants fraudulently induced them to enter into the Agreement. (Am. Compl. ¶¶ 44-61.) They seek rescission of the Agreement and damages. This claim arises out of the Agreement or arises out of or is related to the Agreement or the making of the Agreement. See Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd., 1 F.3d 639, 642 (7th Cir. 1993) (holding that arbitration provision covering all claims "arising out of or relating to" the agreement required arbitration of claim for rescission under Illinois Franchise Disclosure Act). Similarly, the Eighth Circuit has held that a

11

claim for fraud in the inducement of a contract is also subject to arbitration. Houlihan, 31 F.3d at 695. The Court concludes that this claim is subject to mandatory arbitration.

In Count Two: Violation of the Minnesota Deceptive Trade Practices Act, Plaintiffs allege that Market Direct and Appelbaum violated the Minnesota Deceptive Trade Practices Act by "passing of[f] a franchise for that of a joint venture," taking Plaintiffs' intellectual property, disparaging Plaintiffs' business, interfering with Plaintiffs' contractual relationships, causing confusion as to the source of Plaintiffs' goods and services, representing that their services had qualities that they did not have, and creating a likelihood of confusion about the efficacy of their services. (Am. Compl. ¶¶ 63-65.) The Court concludes that this claim is subject to mandatory arbitration because it is related to the making, performance, or breach of the Agreement. See also Allianz Life Ins. Co. of N. Am. v. Am. Phoenix Life & Reassurance Co., No. Civ.99-802 (DWF/AJB), 2000 WL 34333013, at *4 (D. Minn. Mar. 28, 2000) (unpublished) (compelling arbitration of claims under the Minnesota Deceptive Trade Practices Act).

In Count Three: Violation of the Minnesota Prevention of Consumer Fraud Act, Plaintiffs allege that Defendants committed fraud in inducing them to enter the Agreement by representing that the relationship was one of a joint venturer and partner and not a franchisor and franchisee. (Am. Compl. ¶ 69.) The Court

concludes that this claim arises out of or relates to the Agreement or to the making of the Agreement.  See also Allianz Life Ins., 2000 WL 34333013, at *4 (compelling arbitration of claims under the Minnesota Consumer Fraud Act).

Plaintiffs argue that claims for rescission based on fraud in the inducement are not subject to arbitration.  They rely on Minnesota cases for the proposition that the Court, not the arbitrator, should decide the issue of fraud in the inducement.  However, as the Court has determined, this case is governed by the FAA and federal law.  The Supreme Court has held that allegations that an entire contract, not merely the arbitration clause, is void or voidable are determined by the arbitrator, not the Court.  Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, __, 126 S. Ct. 1204, 1209-10 (2006); see also Houlihan v. Offerman & Co., Inc., 31 F.3d 692, 695 (8th Cir. 1994) ("Because the [plaintiffs'] claims of fraud in the inducement relate to the contract as a whole, they are subject to mandatory arbitration.") (citations omitted).  Because assertions that the entire contract is void or voidable are subject to arbitration, particularly when the arbitration clause broadly includes all claims arising out of or related to the contract or the making of the contract, Plaintiffs' fraud in the inducement claim is subject to mandatory arbitration.

In Count Four: Interference with Contractual and Business Relationships, Plaintiffs allege that Defendants have interfered with Plaintiffs' customers,

employees, banks and vendors for the purpose of inducing them to withdraw from associations with Plaintiffs. (Am. Compl. ¶¶ 73-74.) The Court concludes that this claim arises out of or relates to the Agreement or the performance or breach of the Agreement.

In Count Five: Breach of Partnership/Joint Venture Agreement, Plaintiffs allege that Defendants breached the Agreement in various ways. (Am. Compl. ¶¶ 78-80.) This claim arises out of or relates to the Agreement or the breach of the Agreement.

In Count Six: Breach of Fiduciary Duties as Partner/Joint Venturer, Plaintiffs allege that Defendants breached their duties as partners or joint venturers by failing to perform the Agreement, converting partnership assets to their own use, and making misrepresentations. (Am. Compl. ¶¶ 83-84.) This claim arises out of or relates to the Agreement because it is premised on the joint-venture or partnership relationship created and governed by the Agreement.

In Count Seven: Unjust Enrichment, Plaintiffs allege that Defendants have benefitted from Plaintiffs' contributions into the business, while Plaintiffs have lost money. (Am. Comp. ¶ 87.) The Court concludes that this claim arises out of or relates to the Agreement because it is premised on benefits granted to Defendants by virtue of the Joint Venture Agreement.

### 2. Claims Against Appelbaum

Plaintiffs assert that even if the Joint Venture Agreement is valid, the arbitration provision does not apply to this lawsuit because the provision is limited to "controversies between R&S [DSAI, Rozhansky, and Krasny] and CO [Market Direct] and shall not be expanded to include any other Venturer as a party," and this lawsuit includes Appelbaum, who was not a signatory to the Joint Venture Agreement.

Plaintiffs argue that the Court should not compel them to arbitrate their claims against Market Direct and then litigate their claims against Appelbaum because to do so would be expensive, inefficient, and inconvenient. They would have to arbitrate in Connecticut and then litigate in Minnesota. Plaintiffs conclude that, therefore, the Court should not require them to arbitrate any of their claims. There is no authority for this proposition, and the presence of a nonsignatory to the arbitration agreement does not hinder Market Direct's right to arbitration.

In fact, Eighth Circuit precedent indicates that the Court should stay any nonarbitrable claims while the parties bound by the arbitration clause complete their mandatory arbitration. The Eighth Circuit opined:

> [W]hile it is true that the arbitrator's findings will not be binding as to those not parties to the arbitration, considerations of judicial economy and avoidance of confusion and possible inconsistent results nonetheless militate in favor of staying the entire action. Section 3 of

> the Arbitration Act, which permits a court to stay "*any* suit . . . brought in any of the courts of the United States upon any issue referable to arbitration," is broad enough to permit the stay of litigation between nonarbitrating parties as long as that lawsuit is based on issues referable to arbitration under an arbitration agreement governed by the Arbitration Act. In any event, the district court ha[s] the inherent power to grant the stay in order to control its docket, conserve judicial resources, and provide for a just determination of the cases pending before it.

Contracting Nw., Inc. v. City of Fredericksburg, Iowa, 713 F.2d 382, 387 (8th Cir. 1983) (citations omitted).

In any case, the Court concludes that Plaintiffs' claims against Appelbaum are also subject to mandatory arbitration.

> A nonsignatory can enforce an arbitration clause against a signatory to the agreement in several circumstances. One is when the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided. Another is when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting [its] claims against the nonsignatory. When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate.

CD Partners, LLC v. Grizzle, 424 F.3d 795, 798 (8th Cir. 2005) (citations omitted).

Plaintiffs' claims against Appelbaum are based on his conduct as a principal of Market Direct and his conduct forming and maintaining the Joint Venture Agreement. He is not sued as a separate "Venturer," barred from arbitration by the arbitration provision itself, but as an extension of Market Direct. Plaintiffs

16

have not asserted any separate causes of action against Appelbaum - all of the claims in the Amended Complaint are brought against both Market Direct and Appelbaum. In fact, the Counts make no distinction between Market Direct and Appelbaum in their allegations save in Paragraph 74, in which Appelbaum is individually named. All of Plaintiffs' claims are based on the Joint Venture Agreement, as the Court explained in Part III(C)(1). Based on Plaintiffs' Amended Complaint, the relationship between Appelbaum and Market Direct is sufficiently close that only by permitting Appelbaum to invoke arbitration, will evisceration of the arbitration provision be avoided. Additionally, each of Plaintiffs' claims against Appelbaum arise out of and relate directly to the Joint Venture Agreement. The Court concludes that Appelbaum is permitted to invoke the arbitration provision of the Agreement against Plaintiffs.

### 3. Claims Against Delivery, LLC

Plaintiffs also argue that they have recently discovered that Market Direct is not the true owner of the trade/service name "Cleaner Options." Plaintiffs have brought a separate motion to join Delivery, LLC as a party; however, oral argument on this motion before the Magistrate Judge has not yet occurred. At this time, Delivery, LLC is not a party to the Amended Complaint. Currently, only Market Direct and Appelbaum are Defendants in this lawsuit. The issue of whether Delivery, LLC can force Plaintiffs into arbitration is not before the Court.

In any event, even if non-arbitrable claims did exist in the lawsuit, the Court has the power to stay those claims pending arbitration of the arbitrable claims. Contracting Nw., Inc., 713 F.2d at 387.

### 4. Equitable Claims

Plaintiffs note that the FAA provides that arbitration clauses in contracts are enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. They assert that their claim for injunctive relief is outside the scope of authority of an arbitrator, but that Defendants' current conduct will warrant injunctive relief. They conclude that, when a plaintiff properly seeks injunctive or equitable relief, the Court, and not the arbitrator, must decide those issues.

Under the rules of the American Arbitration Association, arbitrators are permitted to award equitable remedies, including injunctive relief. Am. Arbitration Ass'n, Commercial Arbitration Rules & Mediation Procedures, Rules 34(a), 43(a). Additionally, the case relied upon by Plaintiffs, Knorr Brake Corp. v. Harbil, Inc., 556 F. Supp. 489, 494 (N.D. Ill. 1983), merely holds that a court is authorized to enter a preliminary injunction before arbitration if that is required "to preserve the status quo pending arbitration." The case did not hold that all equitable remedies are reserved for courts. Cf. Clarus Med., LLC v. Myelotec, Inc., No. Civ. 05-934 DWF/JJG, 2005 WL 3272139, at *4 (D. Minn. Nov. 30, 2005)

(unpublished) (holding that, under broad arbitration clause, plaintiff's "claims for injunctive relief are appropriately brought before the arbitrator"). The Court concludes that Plaintiffs' request for injunctive relief is properly determined by the arbitrator.

## IV.   CONCLUSION

For the reasons explained above, the Court concludes that all claims in the Amended Complaint against Market Direct and Appelbaum are subject to mandatory arbitration. If a court determines that an issue is referable to arbitration under the written arbitration agreement, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. In this case, Defendants assert that the Court should dismiss the entire case, rather than stay it, because all claims are subject to mandatory arbitration. There is no clear Eighth Circuit authority on whether a Court should dismiss, rather than stay, a case pending arbitration when all of the claims before the Court are arbitrable. See Dalsin, Inc. v. Bodell Constr. Co., Inc., No. Civ. 05-3040, 2006 WL 2193425, at *3 (D.S.D. July 31, 2006) (unpublished) (collecting cases approving and disapproving of dismissal). Out of an abundance of caution, the Court will stay this matter pending arbitration, rather than dismiss the case. By staying these proceedings until the outcome of arbitration, the Court ensures that a forum will

be available to address any issues that might arise after the arbitration is complete.

The Court will retain jurisdiction for any appeal from the arbitration proceedings.

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Dismiss the Amended Complaint [Docket No. 14] is **GRANTED IN PART AND DENIED IN PART** as follows: Plaintiffs are ordered to submit all claims in the Amended Complaint to arbitration in accordance with the Joint Venture Agreement, and this case is stayed pending arbitration.

2. Plaintiffs' Motion to Stay Arbitration [Docket No. 33] is **DENIED AS MOOT**.


Dated:   February 21, 2007               s/ Michael J. Davis
                                         Judge Michael J. Davis
                                         United States District Court